754, ACOC Engineering Incorporated against Airflight Incorporated. Ms. Crandall. Good morning. May it please the court, my name is Rebecca Crandall and I am here on behalf of the Appellant Registrant, ACOC Engineering. The TTAB's error in their ruling is threefold. First, the TTAB abused its discretion in considering whether the services ACOC provides are registrable since the issue was neither pled nor argued. Second, the TTAB erred as a matter of law in finding that ACOC services are not registrable. Third, the TTAB erred as a matter of law in considering the description of services contained in the air flight registration. The TTAB erred in even considering the registrability of the services ACOC currently provides. The parties actually agree that this is not an issue properly before the board. And even if you're right on that point, what difference does it make? Right, well it actually makes quite a difference because... Unless you can persuade us on the other points, your appeal fails, correct? On this particular issue, this abuse of discretion would not change the outcome if they had not... if you agree that they did not err in finding that the services are not registrable, then you're correct, that this issue would not matter so much. But that goes to the core, does it not, of the issues? If in fact it was registrable, we have quite a different situation, do we not? Exactly. Now the... and in actuality, this... we believe that the services and we believe that the TTAB had evidence in front of it that showed that the services were registrable. And so not only did they improperly even consider the issue, they also came to the improper conclusion. The TTAB did properly set forth the criteria for determining what constitutes a service and they particularly focused on the requirement that this service must be performed for the benefit of someone other than the applicant. The TTAB then incorrectly found that ACOC services, which was and are forming the network of air taxi operators, benefited no consumers and thus only benefited ACOC and was not a registrable service. But you said the services were forming... and I'm sorry, what else did you say? Forming an air taxi service? The network of air taxi services. Forming the network. Is that what the registration said? The description contained in the registration is arranging for individual reservations for flights on airplanes. Well, that's a little different than what you just said. Well, that's actually our third issue. But if you'd like... Maybe you should address that. If you'd like to go ahead with that, we certainly may. The TTAB did, we believe, err in construing the scope of services as described in the air flight registration. The board found that the description, which is arranging for individual reservations for flights on airplanes, did not include the first step of the process, arranging the network of air taxi operators in order to provide the flights. The TTAB found that it only included the second step, which was the actual reservation process once the network was formed. Well, and they followed the line of cases which talk about marketing and preparation is not qualifying for use of the mark. And why aren't those cases binding? And that's because clearly you've admitted that all ACOC did was solicit air taxi companies to sign up. And that's as far, I guess he got as far as a dozen of them in the 30 years that he was using this mark, but never got anywhere beyond that. Right. Well, the description was actually quite broad and the board did initially appreciate this. Why wasn't your fight then at the review level with the trademark examiner? Because the examiner rejected your definition repeatedly and ultimately after appeal you came to this arranging for individual reservations for flights on airplanes. But you had sought a much broader use of the registration and the examiner believed that you had been filed the same line of cases that we see in the briefs and saying, no, that's too broad. I won't give that to you. And once you finally decided that this was going to be the terms relevant to your mark, you're stuck with that, right? You didn't appeal that further. You went, okay, this is what I've got. I'm going to live with this. Right. But I think that that misappreciates what actually happened. During this process, the four-year process from application to registration, there was a lot of confusion about what exactly ACOC was seeking protection for. So there was nobody had ever thought to create a network of air taxi operators and arrange for individual seat reservations on their flights. So basically he had a hard time explaining it and both his attorney and the trademark examiner had a hard time following what he was saying. However, it was ACOC's belief and I have to assume the belief of the trademark examiner that the final description which was adopted and registered would encompass what ACOC was actually doing, which was setting up the system. But ACOC was just... I mean, the only thing that has been accomplished as I understand it from the record is that he signed up a few air taxi operators, correct? Right. And that... No one has flown on a seat from one place to another in the entire period in which this allegedly has been going on, correct? Correct. So the registration is for arranging for individual reservations for flights on airplanes. Right. And if there's any ambiguity on what that means, the arguments raised by counsel during prosecution seem to clarify that it doesn't mean just arranging, signing up air taxi operators. It says it should be again emphasized, this is I'm reading from appendix 745, should be again emphasized that the service rendered by applicant is not a service of arranging charter aircraft, but rather is the arrangement of transportation on a seat per seat basis from one point to another with the local aircraft operator, et cetera. Exactly. And that's why we believe that the TTAB has misconstrued the description of services. The... That's a different issue than the issue really before us. That's an issue that you should have sorted out at the time this mark was being prosecuted. Well, as I saw the prosecution history with the trademark examiner, the applicant continued to state exactly what the services were that was being provided. And the trademark examiner was trying to fit that into the list of classes and goods or services that existed. And eventually they came to terms where the examiner didn't use exactly the applicant's words, but they accommodated. It seemed as if they went back and forth perhaps a bit more than might have been necessary. It's hard to tell. But it is, I must say, I have trouble finding a flaw in that. They knew that there wasn't any dissembling as to what the services were for which the mark was being requested. Do you see any other flaw? I don't want you to make the other side's case, but it did seem as if after 40 or 50 years, it was quite strange for the TTAB to say, oh, we got it wrong. You lose after so many years of using the mark. That is exactly correct. It is very strange. If you look through the prosecution history, you'll see that the specimens submitted in support of the registration were always directed to the air taxi operators. So there should have been no mistake that both the arranging of the first step, arranging of the network, and the second step, connecting the passengers to the air taxi operators, were both included and incorporated by this description that they finally came out with. In fact, the first panel to address this issue of the TTAB agreed. They held at summary judgment that the description was very broad and could be found to encompass ACOC's arrangement of the air taxi network in addition to the reservation. The problem is that the Trademark Trial and Appeal Board did not continue to stick with their initial correct finding. Instead, they ignored the law of the case doctrine and rejected the earlier finding, and without explaining why circumstances had changed, because they hadn't, there were no new issues, there were no new arguments, there were no new facts. They simply came out a different way. And we believe this is a very grave error, especially in light of this injustice that has been done to ACOC. They've been using this mark for 40 years, and 30 years after they sought registration, in comes a petitioner, and now the trademark examiner's description that was adopted is found to be a misdescription. And for that, ACOC loses its registration. And it's truly an injustice that should be corrected by reversing the TTABs. Let's hear from the other side. We're into your rebuttal time. Oh, yes. If I may reserve a bit of that. Okay. I would like you to. Thank you. Mr. Kerr. Good morning, your honors. May it please the court. Trademark Trial and Appeal Board is absolutely correct in its holding that the mark was void, the application was void of an issue because Mr. ACOC admittedly, admittedly, in his own words, never made a reservation, never communicated with a prospective passenger, and never arranged for anyone to fly any place on any kind of an aircraft. Your position is that the initial registration is void because the business didn't succeed? No, because he never performed the service that was described in the application. Or he never, it isn't for lack of trying, I gather from the record, saying he didn't succeed. Well, the initial application, if I may quote from the initial application, your honors, which is on page 730 of the record. A little bit difficult to read because the Patent and Trademark Office crossed off the initial application, the initial description. It says for a communication service between persons desiring air travel and certified air taxi operators. Persons desiring air travel are potential passengers. Mr. ACOC testified that he never communicated with a potential passenger. So what you're saying, I just want to make sure I understand your argument as well, as I see what the board did, is that in the back and forth with the trademark examiner, during which the trademark examiner never used exactly the words that the attorney was presenting, but kept suggesting alternatives that differed slightly. Yes, your honor, yes. That that is the problem that they never have accepted 30 years ago the definition of services that the examiner was proposing. That's one of the problems, but the basic problem is that the applicant, that the services were misdescribed in the application as filed. He said he had been performing the services since 1969 of communicating between persons desiring custom air travel and certified air taxi operators. He had not been doing that. Because he had not been successful. No, because he had never even attempted to communicate with a potential passenger. That wasn't the business that he explained, that his attorney tried to explain to the trademark examiner. At that stage, Mr. Aycock was simply trying to recruit air taxi operators who would cooperate with him in providing point-to-point transportation. He was trying to build the business. He was trying to open his doors, right. He was trying to open his doors and he never recruited enough personnel to open his doors. What I'm trying to understand as a matter of policy, is that because this took before the statute changed for intent to use. That is, if a person files a trademark application while trying to develop a business using the name, I gather he was using air flight on his letterhead, at least according to what's in the correspondence. But never succeeds very much. He gets a few customers, but not a lot of customers. He's never got any customers. The record says that some paid to be part of the network. He got air taxi operators to make a refundable deposit. Those were the people that he was seeking to work with all along. I gather that there's no misunderstanding there. The misunderstanding may have been on the part of the trademark examiner or the trademark attorney. But what I'm trying to understand is why after these 30 years of to build the business without very much success, but using the mark on the letterheads, getting some air traffic transportation providers to sign up, say he has no rights at all. Someone can come along and say, never mind. I like that trademark. Go away. Well, first of all, your honor, if you look at the record, my client was using air flight before Mr. Aycock was. My client's predecessors were using air flight in the early and mid 1960s. That's not in the record says 1992. I didn't see any allegation of earlier use. So perhaps that never, perhaps that was never explored. It wasn't explored. It wasn't explored. If there was a matter of prior use, that's quite different, but it wasn't decided on that basis. We didn't see that in, I suppose, because it wasn't before the TTABs. Well, it was before the TTAB, but it was an issue we didn't pursue. It was an issue we did not pursue, but there is in the record. I don't know about it. It's not in the appendix, but it's in the record. Well, I just want to stress it was 1992 or so. At least as early as. That's what the board said. At least as early as because that was the All right. I think that's what we're working with in terms of, if there are matters of prior use, you can always pursue that if it's appropriate. But on the record, there was no question that the use by Aycock was 30 years earlier, not a rising success. I gather that I don't know whether he is or isn't still trying. I saw that there hadn't been a sense of abandonment. Am I correctly reading the TTAB and your argument as saying because the goods were misdescribed, that misdescription voids any attempt to allege use broader than the way the goods are misdescribed? It's not simply a misdescription, Your Honor. Also not in the appendix before you is the fact Mr. Aycock has a later application subsequent to our application in which he does describe his services as arranging a fleet of air taxi operators to carry passengers. That's not before us, right? Not before you. No, it's not before you. But the point is he has a registration on the supplemental register for services which he has never performed, ever. And he missed by the trademark examiner who misunderstood what his attorney was trying to tell. Well, his attorney told him that this was going to be a taxi service and part of the file wrapper history, as a matter of fact, I believe Judge Lynn referred to it, part of the file wrapper history here. It's the attorney responded, the applicant has pointed out to his attorney that his services relate to obtaining of seat reservations on aircraft and not to the charter of the whole aircraft. Applicants reservation for services, I think should be reservation service, directed primarily to certified air taxi operators and not to schedule airline services or travel agency type arrangements. And I think at another point in the record it was made even clearer and it's on page 745. In other words, the mark air flight would not be descriptive of a ticket sales organization. And this, in effect, is what applicant service is all about. Did an applicant, pardon me, at any time attempt to describe the service as forming a network or signing up air taxi operators to perform some service? Never, Your Honor. Never. At any time. So is your explanation of the trademark law is that if any trademark owner, trademarks last for a long time, changes the goods or services with which the mark is used, that mark is then void ab initio? No, Your Honor. That's not my use of the mark for the services described in the application. Yes, that application is void. And in this case, it was transferred to the supplemental register. And at that time, a transfer of the application, an amendment of the application to the supplemental register required a statement that the mark had been in lawful use, which in those days meant exclusive use, in commerce for the year preceding the transfer of the application. He hadn't used the mark in commerce for a year because he never used the mark for the described services at all. Consequently, the transfer of the application was void. So the application on a supplemental register was void. He told the Patent and Trademark Office on four separate occasions that he was using the mark for his reservation services. I don't think that's totally accurate. He doesn't say that he's making reservation services. He says he's not selling plane tickets and making reservations. No. The description of goods, excuse me, description of services initially was the communication service. And the communication service in those days meant being a telephone company, being a radio station, providing the physical facilities for communication. So that was the misdescription that Marty Marks, the examiner, was trying to correct. He's got a communication service with the certified air services. He was in the wrong class. Between persons desiring scheduled and unscheduled airplane reservation services and certified air taxi operators, he's the middle man. He was trying to be the middle man, right. Exactly. His theory was that it was too expensive for a person to charter an entire small plane or a single flight. But if you could aggregate three or four passengers going from the same airport to the same airport, then it would become economically feasible for them to purchase a single seat reservation. So the examiner rejected that definition and just said arranging for reservations. Right. Which is exactly what reservation service. Arranging, it says. Well, no. Let me find that passage again if I may. You know, I can see patent lawyers arguing about a dozen definitions of arranging, but I never thought that the trademark practice had fallen into that sometimes inappropriate retroactive. Here a mark used for 30 or 40 years and we're saying you got it wrong. You and the trademark examiner got it wrong 30 or 40 years ago. Nobody noticed at the time, but now we're going to wipe you out. Judge Norman, he told the office on four separate occasions. When he filed the application, when he transferred to the supplemental register, when he filed a declaration in the section eight, when he renewed the registration, that he was using the mark initially set for communication services and thereafter for services which are described in the registration, which are arranging for individual reservations. He has never ever done that for flights on airplanes. He's never done that. And yet he told the office four separate times that that's what he was doing. That's what the office told him. No, we told the office. He said he wanted communication service. I'm looking at the letter from the examiner that you directed us to in the record at page 748. The examiner says it is suggested that the recitation be amended and then rejecting his proposed communication service and say never mind, we'll just call it arranging. The examiner makes suggestions. It's the applicant and the applicant's attorney who ultimately make the decision. After several years of back and forth with the examiner, are you faulting these people for stopping the flow of services? The several years, your honor, were dealing with the issue of descriptiveness, not with the issue of the identification of services. The issue of descriptiveness of the mark. Ultimately, he appealed from the refusal under section 2E1. I agree. The examiner found all sorts of flaws. Right. That's what the examiner was supposed to do. And then finally, he amended the application in 1973 to the supplemental register after filing an appeal. First he filed the appeal, then he amended the application to the supplemental register. So, the several years were taken up with the descriptiveness issue, not with the identification of services issue. Okay. Any more questions for Mr. Terry? Any more questions? Or I didn't mean to, I was going to say, I did mean to argue with you. Okay. Ms. Crandall. I think you've touched on a very important issue with Petitioner's Council. At 731 where it was originally described as a communication service by Aycock himself and his attorney, but then it was the trademark examiner who rejected that. The trademark examiner was the one who rejected it. It was the trademark examiner who rejected that because it was an incorrect description based on the specimen submitted. At 734, it describes a, this advertisement submitted was specifically directed to the air taxi operators. And then as the communications continued back and forth between the trademark examiner and the Aycock's attorney, there were actually a couple of specimens submitted that explained, air flight is a network. For example, at 766, it specifically says air flight is a network. And I think that's why the trademark examiner, who is an expert in describing services, specifically trained to identify the correct and proper description of services, suggested the word arranging as so broad so that it would encompass both the arranging of the network and then later the use of connecting the network to the potential consumers. So I think it was repeatedly shown during the prosecution history that the process included the creation of a network. It's only that the TTAB, the second panel of the TTAB who failed to appreciate that that was encompassed by the description. And that was its gravest error in canceling this mark. Okay. Any questions for Ms. Grandel? Any more questions? Thank you so much. Thank you both, Ms. Grandel and Mr. Kara. Case is taken under submission.